UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Stephanie Booker,                                      Case No. 3:22-cv-1233

           Plaintiff,

     v.                                              MEMORANDUM OPINION
                                                       AND ORDER

Board of Education
of the Toledo City School District,

           Defendant.

## I.    INTRODUCTION

Defendant Board of Education of the Toledo City School District ("TPS") moved for summary judgment on all claims asserted by Plaintiff Stephanie Booker. (Doc. No. 10). Booker filed a brief in opposition. (Doc. No. 12). TPS filed a reply. (Doc. No. 14).

After Booker filed her opposition, TPS filed a "Motion to Strike Affidavit of Stephanie Booker" directed at a post-deposition affidavit attached to Booker's brief opposing summary judgment. (Doc. No. 13). Booker opposed this motion as well. (Doc. No. 15).

## II.    BACKGROUND

Stephanie Booker has worked as a Campus Protection Officer ("CPO") for the Toledo public school system since 2002, and she has been employed by TPS in other roles since 1983. She is a member of the American Federation of State, County, and Municipal Employees ("AFSCME").

As a CPO, Booker is responsible for maintaining the safety and security of her assigned school, including by: patrolling the grounds; breaking up fights; restraining unruly students; preparing incident reports; and assisting the school principal with developing and implementing

security and safety procedures. While CPOs sometimes remain with one school for consecutive school years, TPS can, and does, reassign them from year to year based on the needs of the district. (Doc. No. 10-3 at 4, 419-420; Doc. No. 10-4 at 3; Doc. No. 10-2 at 16).

CPOs like Booker are generally guaranteed employment, including pay and benefits, during the nine-and-a-half month school year. (Doc. No. 10-3 at 3, 179; Doc. No. 10-2 at 25-26). But during the summer, when school is out, CPOs must bid for temporary, forty-hour-a-week "Miscellaneous Laborer" positions, which are awarded based on seniority. (Doc. No. 10-3 at 173; Doc. No. 10-2 at 59). Unlike for the work CPOs perform during the school year, CPOs cannot use any kind of paid leave, including paid sick leave, when working as a Miscellaneous Laborer over the summer. (Doc. No. 10-3 at 174; Doc. No. 10-2 at 60).

Booker has plantar fasciitis. (Doc. No. 10-2 at 23). In 2018, Booker developed carpal tunnel syndrome and trigger finger syndrome in her left hand. (Doc. No. 10-4 at 6). She underwent surgery later that year to address her hand conditions and was unable to bid for summer work as a result. (Doc. No. 10-2 at 58-59). In 2019, she again developed carpal tunnel syndrome and trigger finger syndrome—this time on her right hand. (Doc. No. 10-4 at 6). She underwent surgery to address those conditions on May 20, 2019, and she requested sick time for the surgery and her subsequent recovery. (Doc. No. 10-2 at 15-16). Booker received sick pay from May 20 through May 28, 2019, the last day of that school year. (*Id.* at 16). Because of the timing of her surgery, Booker was again unable to work during the summer. (*Id.* at 59).

Booker did not receive sick pay for the time she spent recovering from her surgery after the end of the 2018-2019 school year, through August 17, 2019. (Doc. No. 10-2 at 59). Although Booker acknowledged that CPOs "don't get paid for sick time" when working over the summer as Miscellaneous Laborers, she maintains she should have continued to receive sick pay the entire time she recovered from her second surgery, including the summer months. (*Id.* at 60; Doc. No. 12 at 8-

2

9). TPS maintains that CPOs may not use any sick leave during the summer months because they are not required to work during that time. (Doc. No. 10-3 at 3; Doc. No. 10 at 4).

In early 2020, after the advent of the COVID-19 pandemic, Toledo schools temporarily shut down. CPOs were considered essential personnel. Because students did not attend school in-person during that time, TPS temporarily required CPOs to work 1-2 days a week, in rotation, helping distribute food and school materials to students. (Doc. No. 10-1 at 2-3; Doc. No. 10-2 at 30). Booker testified that TPS called her on each of her rotation days and asked if she was coming to work, but because of the pandemic, she declined. (*Id.* at 30). Booker testified that she was forced to use 15 sick days during this period. (*Id.* at 18). She also testified that two other CPOs, Rick Turner and Rosalind Knighten, did not have to use sick time during the temporary COVID-19 shutdown—though she also acknowledged that Turner and Knighten did report to work on their scheduled rotation days. (*Id.* at 19).

In addition, Booker endured disparaging remarks about, and references to, her age from some of her coworkers and other TPS employees. Other CPOs suggested she should retire, asked her questions about AARP, asked her how old she was, and pointedly referred to the length of her tenure with TPS. (Doc. No. 10-2 at 20-21). As of July 13, 2023, Booker still worked for TPS as a CPO. (Doc. No. 12-1 at 3).

Booker sued TPS in the Lucas County Court of Common Pleas on April 11, 2022, and she filed an Amended Complaint on June 23, 2022. (Doc. No. 1-1; Doc No. 1-3). TPS removed the case to this court on July 13, 2022.[1] (Doc. No. 1).

---

[1] Booker's initial complaint included only state law claims, and citizenship of the parties was not diverse because Booker is a citizen of Ohio and TPS is a school district organized under Ohio law. (*See* Doc. No. 1-1). Therefore, at the time Booker filed her initial complaint, this court did not possess original subject matter jurisdiction over this case, and it could not have been removed. *See* 28 U.S.C. § 1441(a)-(b), § 1331, § 1332. Booker's Amended Complaint added her federal ADA and ADEA claims, and TPS removed within 30 days of that filing. (*See* Doc. No. 1-2). Because the "case stated by the initial pleading [was] not removable," TPS's removal on July 13, 2022 is timely

3

### III. STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the [record] . . . ,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25.

Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. Gen. Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v.*

---

because it occurred "within thirty days after receipt by the defendant . . . of a copy of an amended pleading . . . from which it may first be ascertained that the case . . . has become removable." 28 U.S.C. § 1446(b)(3).

*Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). But "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter.'" *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). Therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071.

The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, I must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

## IV. ANALYSIS

Booker brings four claims against TPS: (1) disability discrimination under Ohio law, (2) disability discrimination under the Americans with Disabilities Act ("ADA"), (3) age discrimination under Ohio law, and (4) age discrimination under the federal Age Discrimination in Employment Act ("ADEA"). (Doc. No. 1-3). TPS seeks summary judgment on all of Booker's claims. (Doc. No. 10).

**A.    Booker's Affidavit**

As a preliminary matter, I must address TPS's second motion, styled "Motion to Strike Affidavit of Stephanie Booker," asking me to disregard the affidavit Booker attached to her opposition. (Doc. No. 13). TPS argues that the affidavit asserts facts not supported by material evidence under Rule 56(c)(2) because those sworn statements variously: (1) contradict Booker's sworn deposition testimony, (2) refer to events of which Booker has no personal knowledge, (3) contain inadmissible hearsay, and (4) contain new allegations not presented in her Amended

5

Complaint. (*See id.* at 3-4). Booker argues her affidavit "complies with the requirements for evidence to be considered under Rule 56 of the Federal Rules of Civil Procedure." (Doc. No. 15 at 1-2).

To show that a fact "cannot be or is genuinely disputed," a party may cite "to particular parts of materials in the record, including . . . affidavits." Fed. R. Civ. P. 56(c)(1). But a court may not consider a post-deposition affidavit on summary judgment if it "directly contradicts the nonmoving party's prior sworn testimony." *Francis v. ProMedica Health Sys., Inc.*, 601 F. Supp. 3d 258, 262 (N.D. Ohio 2022) (quoting *Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006)) (internal quotation marks omitted). In addition, a court may not consider an affidavit at summary judgment if it is not based on the affiant's personal knowledge or if it contains evidence that would not be admissible in any form. *See* Fed. R. Civ. P. 56(c)(4) (affidavits must be made on personal knowledge); *Bailey v. Youth Villages, Inc.*, 239 F.R.D. 483, 486-89 (M.D. Tenn. 2006) (determining whether the Federal Rules of Evidence barred the consideration of portions of three affidavits).

First, Booker's assertions in paragraphs 3 and 4 of her affidavit about the way her medical conditions affected her daily life activities do not directly contradict her deposition testimony because it "can be simultaneously true" that she had a disability under the ADA and yet did not require a work-related accommodation for that disability. *Francis*, 601 F. Supp. 3d at 262; s*ee also Hoskins v. Oakland Cnty. Sheriff's Dep't.*, 227 F.3d 719, 725 n.2 (6th Cir. 2000) (noting the court "need not address" whether the plaintiff's disability substantially affected her ability to work where that disability substantially affected other major life activities).

Second, the statements in Booker's affidavit generally refer to and reflect Booker's personal knowledge and lay opinion of the events in question. *See* Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 701 (lay opinion is admissible if it is based on witness's perception, is helpful to understanding a fact or testimony, and is not based on scientific or specialized knowledge). Booker asserts the statements in

her affidavit are "true to the best of her knowledge," and her affidavit describes her personal experiences, actions, and conversations. (Doc. No. 12-1 at 1).

Third, the supposed hearsay statements in paragraph 11 of the affidavit were allegedly made by a supervisor employed by TPS and would potentially be admissible as the statement of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D) (hearsay is admissible when made by a party-opponent's employee acting within the scope of employment); (Doc. No. 12-1 at 4). Further, because the supervisor could be called to testify at trial, her statements would be admissible in that form as well.

The statements in Paragraphs 9, 10, 12, and 14 referring to events allegedly taking place after Booker filed her Amended Complaint are a different matter. Booker filed her Amended Complaint on June 23, 2022, and portions of her affidavit refer to events taking place in early to mid-2023. (*See* Doc. No. 12-1 3-4; Doc. No. 1-3 at 4). Neither Booker's opposition brief nor her affidavit specify how these events relate to her current claims for disability and age discrimination. But, to the extent Booker seeks to assert claims based on events that occurred after the filing of the Amended Complaint, she "was required to either supplement [her] pleading in this action" or "file a separate lawsuit based on" those subsequent facts. *Adams v. Nature's Expression Landscaping, Inc.*, No. 5:16-cv-98-JMH, 2018 WL 4390721 at *7 (E.D. Ky., Sept. 14, 2018). She did not do either of those things. Therefore, I will not consider those statements in evaluating this motion for summary judgment.

With the exception of the statements in Paragraphs 9, 10, 12, and 14 referring to events that allegedly took place after Booker filed her Amended Complaint, I deny TPS's motion and will consider Booker's affidavit along with the other record evidence cited by the parties.

B. **Disability Discrimination Claims**[2]

The ADA prohibits an employer from discriminating against an employee because of the employee's disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A claim of disability discrimination in employment relying on circumstantial evidence, like the one in this case, is analyzed under a three-part burden-shifting framework. *See Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).

First, a plaintiff must establish a prima facie case of discrimination. *Id.* If the plaintiff does so, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision." *Id.* (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1179 (6th Cir. 1996)). Once the employer makes this showing, "the burden shifts back to the employee to establish that the employer's explanation is a mere pretext for unlawful discrimination." *Id.*

To establish a prima facie case of disability discrimination, a plaintiff must show: "(1) he or she is disabled but (2) otherwise qualified for the position, with or without reasonable accommodation; (3) he or she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) either the position remained open; [s]he was replaced by a non-disabled person; or similarly-situated non-disabled employees were treated more favorably." *Deister v. AAA Auto Club of Mich.*, 91 F. Supp. 3d 905, 918-19 (E.D. Mich. 2015) (citing *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011)) (further citation omitted).

---

[2] This section applies the law of the ADA to Booker's federal and state disability discrimination claims. Because the "'federal Americans with Disabilities Act [] is similar to the Ohio handicap discrimination law,'" courts can "consider the ADA and state law claims simultaneously by looking to the cases and regulations that interpret the ADA." *Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1104 n.3 (6th Cir. 2008) (quoting *City of Columbus Civ. Serv. Comm'n v. McGlone*, 697 N.E.2d 204, 206 (Ohio 1998)).

TPS argues Booker cannot make out a prima facie case of disability discrimination for several reasons: Booker was not disabled; TPS did not know of any purported disability; TPS took no adverse employment action against her; and even if it did, it treated her no less favorably than other, non-disabled employees. (Doc. No. 10 at 7-11). In its reply, TPS further argues that it had legitimate, non-discriminatory reasons for each of Booker's alleged adverse employment actions, and Booker cannot show pretext. (Doc. No. 14 at 6).

Booker attempts to rebut these arguments. Pointing to her affidavit, she says her hand conditions and plantar fasciitis qualify as disabilities under the ADA and that TPS knew she was disabled because she reported each of her medical absences. (Doc. No. 12 at 6-8). She argues TPS took three adverse employment actions against her: (1) denying her sick pay, (2) transferring her repeatedly to different schools, and (3) forcing her to use sick pay during the COVID-19 pandemic. (*Id.* at 8-9). Regarding her transfers and forced use of sick pay, she argues other CPOs were treated more favorably than she was because they were transferred less often and were not forced to use sick time during the COVID-19 pandemic. (*Id.* at 9). Finally, she argues TPS had no legitimate, non-discriminatory reason for taking these adverse actions against her, and that any such reason would be pretextual. (*Id.* at 9-10).

Even assuming Booker could make out the first four elements of the prima facie case, she fails on the fifth. To make this showing, a plaintiff must compare their circumstances to those of a "specific non-protected employee[] to determine whether the other employee is similarly situated." *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 809 (6th Cir. 2020) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). While Booker "must show that she is similar to her proposed comparator in 'all relevant respects,'" she need not pick an employee who is identical to her in every way. *Miles v. South Cent. Hum. Res. Agency*, 946 F.3d 883, 893 (6th Cir. 2020) (quoting *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012)). So, determining whether

9

employees are similarly situated requires a court to "look at those factors relevant to the factual context." *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008). Of particular importance to this case, "[e]mployees are not similarly situated if there are 'differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Waggoner v. Carlex Glass Am., LLC*, 682 F. App'x 412, 415 (6th Cir. 2017) (quoting *Jones v. Potter*, 488 F.3d 397, 405 (6th Cir. 2007)).

To start, Booker "has not identified a similarly situated, non-protected employee who was treated more favorably" with respect to her denial of sick pay. *Clayton v. Shelby Cnty. Gov't*, No. 08-2612-TMP, 2013 WL 12340144 at *15 (W.D. Tenn. Aug. 22, 2013) (granting summary judgment where an employee, whose request for leave was denied, failed to identify a similarly situated employee); (*see* Doc. No. 12 at 9). She thus has failed to make out her prima facie case with respect to this alleged adverse employment action.

Likewise, although Booker asserts she "has been shifted around more than other CPOs," she does not identify any specific TPS employees for comparison. (Doc. No. 12 at 9; Doc. No. 10-2 at 32). Because she has not identified "at least one comparable employee outside the protected classification who was similarly-situated in all relevant respects, but who nonetheless received more favorable treatment," she has failed to make out her prima facie case with respect to the transfers as well. *Foust v. Metro. Sec. Servs., Inc.*, 829 F. Supp. 2d 614, 623-34 (E.D. Tenn. 2011).

This leaves the forced use of sick time. During the early stages of the COVID-19 pandemic, when Toledo Public Schools temporarily shut down, Booker claims TPS forced her to use 15 days of sick time because she did not want to report to work. (Doc. No. 10-2 at 19; Doc. No. 12-1 at 4). Booker identifies two CPOs, Rick Turner and Rosalind Knighten, who, she says, were not forced to use sick time during this period. (Doc No. 12 at 9; Doc. No. 10-2 at 18-19). In her briefing, Booker

flatly asserts that Turner and Knighten "did not have to use sick time even when they did not report to work," citing a portion of her deposition in support. (Doc. No. 12 at 10).

But Booker's deposition testimony does not say this. Instead, Booker testified that Turner and Knighten were not required to use sick time when they reported to work, sat in their cars in the parking lot, and then were sent home. (Doc. No. 10-2 at 19). The relevant portion of the deposition reads:

> Q: Who, who are these employees that you're referring to?
>
> A: Well, I was -- this is when we were supposed to be quarantined in the state, we were quarantined in.
>
> Q: Okay.
>
> A: And just from talking to people when I got back to work, um, saying well, I didn't come up here every day and they didn't take 15 days from me, just in general everybody that I talked to.
>
> Q: Can you give me the names of any of these employees?
>
> A: Any of them. All of them. You know, Rick Turner's on there, Ros, they said they would come up, they stay in the parking lot. We only had to stay up here 40, 45 minutes and they took a whole day, they sat in the car. Um, like I said everybody that I asked I said well, did they take your sick days? No.
>
> Q: But did you report to work on any of those days?
>
> A: No.
>
> Q: And, and these other employees did report to work, correct, even if it was just for 45 minutes they reported to work?
>
> A: Not every day.
>
> Q: Not every day but they reported to work?
>
> A: They said they sat in their car in the parking lot.
>
> Q: In the parking lot of the school they were assigned to?
>
> A: (Indicating.)

(Doc. No. 10-2 at 17-18).

When TPS schools closed temporarily in early 2020, CPOs worked 1-2 days a week in a rotation—they did not work every day during that period. (Doc. No. 10-1 at 2-3; Doc. No. 10-2 at 30). Booker cites no other evidence to support her assertion that Turner and Knighten called off work on the days they were instructed to report to work but were not required to use sick time.

Because Booker alleges TPS treated her adversely in response to specific conduct—calling off work—whether Turner and Knighten engaged in that same conduct prior to their alleged differential treatment is "relevant for purposes of her claim." *Hoskins*, 227 F.3d at 732 (explaining that the shorter duration of an alleged comparator's disability rendered that person not similarly situated). Booker alleges she was forced to use sick pay after she refused to report to work. While Turner and Knighten were not forced to use sick pay, they did report to work—unlike Booker. These different circumstances "distinguish . . . [TPS]'s treatment" of Turner and Knighten because they did not engage in the same conduct Booker did. *Waggoner*, 682 F. App'x at 415 (internal citation and quotation marks omitted).

Further, Booker points to no evidence either Turner or Knighten was "non-protected"— that is, not disabled—so they fail as comparators for this reason too. *Willard*, 952 F.3d at 809; (*see* Doc. No. 12 at 9-10). Turner and Knighten are not similarly situated to Booker with respect to her forced use of sick time, so Booker has failed to make out her prima facie case with respect to this alleged adverse employment action.

Because Booker has failed to identify a similarly situated non-disabled employee with respect to any of her alleged adverse employment actions, she has failed to make out a prima facie case of disability discrimination. I conclude it is unnecessary to reach the parties' arguments as to the other parts of the burden-shifting analysis and I grant TPS's motion for summary judgment on Booker's federal and state law disability discrimination claims.

C.	Age Discrimination Claims[3]

The ADEA prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623(a)(1).[4] A claim of age discrimination can be established through direct or circumstantial evidence. *Lefevers v. GAF Fiberglass Corp.* 667 F.3d 721, 723 (6th Cir. 2012). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). In contrast, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*).

Booker does not argue there is any direct evidence of age discrimination in this case. (*See* Doc. No. 12 at 10) (arguing she has made out her prima facie case of age discrimination). Where the plaintiff presents allegations based upon circumstantial or indirect evidence, the claim is analyzed under the burden-shifting framework of *McConnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

In establishing a prima facie case of age discrimination, evidence must be proffered to establish the following factors: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." *Blizzard v. Marion Technical College*, 698 F.3d 275, 283 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

---

[3] This section applies the law of the ADEA to Booker's federal and state age discrimination claims. "Age discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'" *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Wharton v. Gorman–Rupp Co.*, 309 F. App'x 990, 995 (6th Cir. 2009)) (internal citation omitted).

[4] "(a) Employer practices
 It shall be unlawful for an employer—
  (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms conditions, or privileges of employment, because of such individual's age[.]"

13

When a prima facie case is established, the burden of production then "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. Once the employer has met its burden, the burden shifts back to the plaintiff to show the employer's stated reason for the adverse action is pretextual. *Id.* at 804. At all times, the burden of persuasion is upon the plaintiff to demonstrate "'age was the "but-for" cause of their employer's adverse action.'" *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009)).

TPS argues Booker cannot establish a prima facie case of age discrimination because she did not suffer any adverse employment action and cannot show that similarly situated, younger employees were treated more favorably. (Doc. No. 10 at 12). In response, Booker repeats the arguments she made about adverse employment actions and similarly-situated employees for her disability discrimination claim.[5] (Doc. No. 12 at 11).

For the reasons I discussed above, Booker has failed to show any TPS employee was similarly situated to her with respect to any of the alleged adverse employment actions she discusses. Therefore, I grant TPS summary judgment on Booker's federal and state law age discrimination claims as well.

---

[5] Booker's brief in opposition also notes the disparaging remarks made to her by her coworkers and states, "Defendant does not argue any legitimate business reason for treating Ms. Booker differently than other CPOs." (Doc. No. 12 at 11). But this section of her brief cites no case law and makes no particular legal argument as to the role she believes the disparaging comments might play in proving her prima facie case of age discrimination. (*See id.*). Because Booker "briefly summed up a few facts pertinent to her claim" but "coupled [them] with a lack of supporting citation," she has failed to make a legal argument, based on these facts, pertaining to her prima facie case. *Franklin v. Colvin*, 2015 WL 9255563 at *3 (W.D. Ky. Dec. 18, 2015); *see also* Local Rule 7.1(c) (memoranda must contain "the points and authorities" on which a party relies).

14

V. CONCLUSION

For the reasons discussed above, I grant in part and deny in part TPS's motion to disregard Booker's affidavit.  (Doc. No. 13).  Further, I grant TPS's motion for summary judgment in full and dismiss all of Booker's claims.  (Doc. No. 10).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge